UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN MARTIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:22-cv-02363-SEB-TAB |
| | ) |
| REAGLE, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Kevin Martin's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case ISR 22-08-0164. For the following reasons, his petition is **denied**, and this action is **dismissed with prejudice**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On August 29, 2022, correctional officer J. Downs charged Mr. Martin with offense B-235, resisting, in case ISR 22-08-0164. Dkt. 9-1. The report of conduct states:

> On 8-29-2022 at approx. 4:16pm I, Ofc. Downs and Ofc. Key got incarcerated individual Martin, Kevin #169789 G-Cellhouse 7-4C out for his shower. When we escorted him out of his cell, Martin jerked his arms away from me and attempted to break my grip on the escort. I ordered Martin to stop what he was doing and just walk. Martin then started arguing with me. I then turned Martin around and secured him in his cell due to him resisting and being argumentative with staff.

*Id.*

On September 7, 2022, the screening officer notified Mr. Martin of the charge and provided him with copies of the report of conduct and the notice of disciplinary hearing (screening report). Dkt. 9-2. Mr. Martin pled not guilty and requested the following witnesses: Officer K. Ash, offender Benito Pedraza, offender Anthony William, and Captain Ernest. *Id.* Mr. Martin wanted to ask Captain Ernest: "What is protocol moving offenders to GCH." *Id.* This request was denied as irrelevant. *Id.*

As physical evidence, Mr. Martin requested the video of the incident from 4:00 p.m. to 5:30 p.m., which was granted but only from 4:10 p.m. to 4:20 p.m.; the incident report of the incident, which was denied as irrelevant; and a log book copy, which was also denied as irrelevant. *Id.*

An email from Officer Ash says that he did not recall the situation with offender Martin, Kevin #169789 on August 29, 2022. Dkt. 9-13.

Inmate Benito Pedraza submitted a witness statement, which said:

> "I seen Martin walk down the range to shower when downs and the other c.o. yanked him by his wrists and then turned him around to make him go back to his cell."

Dkt. 9-8.

>Mr. Pedraza also provided another statement, which said:
>
>My name is Benito Padraza D.O.C. #178014. The video tape will reveal that Martin head off range going to the shower when c o Downs use force by pullin handcuffs and state in relevant part when he get back to his cell he going to write u up. C.O. Downs state you not going to get a shower and Martin tund around and went back to his cell.

Dkt. 9-10 (errors in original).

>Inmate Anthony Williams provided a statement, which said:
>
>I Williams 120281 GYC #9 affirm that on or about 8-29-22 morning that I observed Sgt. Morales on 4C Range stop at 4C #7 Kevin Martin's assigned cell in G-cellhouse tell Kevin Martin she will review 4C Range cameras the [illegible] day to see if Kevin Martin resisted Downs going to the shower when 4C Range shower was conducted.

Dkt. 9-11 (errors in original).

>Mr. Williams then provided another statement, which said:
>
>I provided handwritten statement already. He (Martin) gave it to the screening officer! Martin inquired Captain Ernest and Officer Ash statement. Captain Ernest statement was bout GCU protocol and Officer Ash statement was bout being present during allegded incident. The right protocol was for screening to bring me statement not officer [illegible] at 6:25 a.m. on 9-15-22.

Dkt. 9-9 (errors in original).

>Officer Key also submitted a witness statement, which said:
>
>On 8-29-2022 I, Ofc. Key was escorting Incarcerated Martin, Kevin, #169789 G-Cellhouse 7-4C out of his cell to the shower with Ofc. Downs. When we onto the range, Incarceraed Individual Martin tried to pull away from Ofc. Downs by moving his body back and fourth. Incarcerated Individual Martin then began arguing. Incarcerated Individual Martin was then turned around and placed back into his cell as he was not complying with the escort or with us trying to do our job.

Dkt. 9-7 (errors in original).

>The video summary states:
>
>4:15:52 Officers Key and Downs remove Offender Martin from his cell and start to escort him up the range. Martin immediately starts jerking his arms back and fourth. As the escort continues, he is attempting to turn towards Downs and appears to be

3

>saying something to her. He is stopped by cell 1, turned around and escorted back to his cell. On the way to his cell he continues to turn towards Downs.
>
>4:16:47 Martin is secured in his cell and restraints removed.

Dkt. 9-12 (errors in original).

The Court's review of the video is consistent with the above report.

The disciplinary hearing officer (DHO) held a hearing in case ISR 22-08-0164 on September 27, 2022. Dkt. 9-6. Mr. Martin pled not guilty and stated:

>"What's procedure for removing me from cell? She put her hand in the middle of the cuffs and pulled me back and fourth. She violated policy, she didn't use the lead. Why didn't she call the Sgt? Miller said he saw her with lead."

*Id.* (errors in original).

The DHO considered the staff reports, Mr. Martin's statement, the evidence from witnesses, and the video. *Id.* The DHO found Mr. Martin guilty of offense B-235, resisting, stating: "Video backs conduct. Bad demeanor. 8:46 Martin starts getting angry, loud telling me I am lying and being biased and breaking policy. Sanctions/verdict was read then I walked away." *Id.* The DHO imposed the following relevant sanctions: a 90-day credit time deprivation and a one-step credit class demotion. *Id.* The DHO also imposed a 90-day period of restrictive housing from September 27 through December 26, 2022.

Mr. Martin's administrative appeals were denied. This habeas action followed.

### III. Discussion

Mr. Martins' claims are discerned as: (1) denial of First Amendment and Indiana constitutional right to free speech and right to associate; (2) denial of evidence; (3) insufficient evidence; (4) violation of Indiana Department of Correction (IDOC) policy; (5) failure to provide an impartial decisionmaker; and (6) he was unlawfully held in restrictive housing. Dkt. 1 at 3-6.

4

### A. Freedom of Speech and Association

Mr. Martin argues that his rights to freedom of speech and association were violated when the DHO did not accept Mr. Martin's written statement. Dkt. 14 at 4. The DHO did, however, consider Mr. Martin's oral statement during the hearing. Dkt. 9-6. Mr. Martin does not explain how the statements differed. In addition, the only constitutional right at issue in this case is the Fourteenth Amendment's protection of due process, and the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). This claim is denied.

### B. Denial of Evidence

Mr. Martin contends that the DHO refused to allow him to present a statement from Captain Earnest. Dkt. 1 at 4. Mr. Martin wanted Captain Earnest to testify about IDOC protocol for removing an inmate from his cell. That request was properly denied as "irrelevant." Dkt. 9-2. Mr. Martin also argues that his requests for an incident report and a log book were denied. Dkt. 1 at 5.

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

Mr. Martin has not explained what additional information an incident report or log book would have provided, nor has he shown their relevance. The requested evidence would not have undermined the DHO's conclusion that Mr. Martin resisted when being escorted to the showers. Therefore, this claim fails.

### C. Sufficiency of Evidence

Mr. Martin next argues that it was Officer Downs who moved him back and forth, not the other way around. Mr. Martin was found guilty of offense B-235, resisting. "Resisting" is defined as "fleeing or physically resisting a staff member while that staff member is in the performance of his/her duty." Dkt. 9-16 at 8. In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones,* 637 F.3d at 849 (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Here, the conduct report stated that Mr. Martin "jerked his arms away from me and attempted to break my grip on the escort." Dkt. 9-1. This alone provides sufficient evidence for the charge and disciplinary conviction. There was no due process error in this regard.

6

### D. IDOC Policy

Mr. Martin argues that his first level appeal was not processed within 30 days, in violation of IDOC policy. There is no due process right to an administrative appeal, and thus any errors during the administrative appeal process cannot form the basis for habeas relief. Moreover, any policy violation claim is not cognizable for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("state-law violations provide no basis for federal habeas review."); *Keller v. Donahue,* 2008 WL 822255, 271 Fed. Appx. 531, 532 (7th Cir. Mar. 27, 2008) (an inmate "has no cognizable claim arising from the prison's application of its regulations."). This claim fails.

### E. Impartial Decisionmaker

Next, Mr. Martin argues that he was deprived of his right to a hearing before an impartial decision-maker. *See Hill*, 472 U.S. at 454. He asserts that the DHO denied his request for a continuance to obtain more statements from an inmate who would say he did not resist. Dkt. 1 at 3.

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667. Another possible example of bias is if the DHO were found to have an intimate relationship with a crucial witness in the case. *See Eads vs. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). However, none of those

circumstances are alleged here. Mr. Martin does not assert that the DHO was involved in the incident or the investigation thereof, nor that he had an inappropriate relationship with a witness. To the extent the DHO denied a witness who would say Mr. Martin did not resist, such a statement would have been repetitive because other inmates said the same thing. There is no due process right to present repetitive evidence. The presumption that the DHO was not biased prevails.

### F. Restrictive Housing

Finally, Mr. Martin's attempt to challenge the 90-day placement in restrictive housing is misplaced in this habeas action. *Montgomery v. Anderson,* 262 F.3d 641, 643 (7th Cir. 2001) (only claims that affect the duration of custody can be challenged in habeas actions – restrictive custody claims cannot). Even if the restrictive housing challenge could be asserted in a habeas action, such a claim is now moot because the 90 days has expired.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Martin to the relief he seeks. Accordingly, Mr. Martin's petition for a writ of habeas corpus must be **denied** and the action **dismissed.** Judgment consistent with this Order shall now issue.

IT IS SO ORDERED.

Date: 9/8/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEVIN MARTIN
169789
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Monika P. Talbot
INDIANA ATTORNEY GENERAL
monika.talbot@atg.in.gov